## WILMERDING vs. HART and HART.

In the spring of 1841 defendants agreed to accept the drafts of W. & H. to the amount of $4,000, to be refunded by consignments of flour during the season. Large consignments were made and generally drawn against; any not drawn against were credited towards the $4,000. In November of that year, W. & H., being indebted to plaintiff, gave him a bill of lading of flour consigned to defendants, accompanied with a draft on them against such consignment. Defendants received this consignment in December and, it being unaccompanied with any draft, credited it towards the $4,000. In January following, plaintiff presented bill of lading and draft, which was refused acceptance. *Held*, that defendants had no lien on this consignment beyond advances for freight and charges; that the acceptances for the $4,000 were made upon the personal credit of W. & H.; that their giving plain-

tiff the bill of lading and draft passed title to him to the flour so drawn against; and that defendants are liable to him for the net proceeds of this flour, to the amount of the draft and interest.

ASSUMPSIT upon the common counts. Williams & Hitchcock were millers in the city of Rochster, and the defendants commission merchants in the city of New York, and in the spring of 1841, the latter agreed with the former to accept drafts to the amount of some $4000, without being covered with bills of .lading, for the purpose of putting them in funds to make purchases of wheat to supply their mill, and these to be refunded by sending flour in the course of the season, without being accompanied with drafts.

The said Williams & Hitchcock had, in the course of the season, manufactured and consigned to the defendants flour to the amount exceeding $40,000, but generally covered it with drafts upon the consignees, which were accepted and paid. Occasionally, a lot was forwarded, without drafts, which was credited on general account, and intended to be applied to the $4,000 advance.

The plaintiff in this suit was engaged in the purchase of wheat for Williams & Hitchcock during the season of 1841, and in October found himself in advance to them of about $2,000 of his own funds, and for the purpose of refunding him the amount, they agreed to give him a draft upon the defendants for $2,000, and accompany it with a bill of lading of flour shipped, so as to insure its acceptance and payment. The draft was given, accordingly, on the 1st November; at this time, there was no flour ready to be forwarded, but wheat on hand sufficient, when manufactured, for the purpose. They agreed, as soon as the flour was manufactured and shipped to forward to the plaintiff the bill of lading that he might attach it to the draft, and which was sent to him, accordingly about the 19th of the month for 370 bls., and the draft and bill of lading attached transmitted for acceptance and payment. It was presented about the 7th January following, and protested for non-acceptance. The flour had been received by the consignees (the defendants) about the first of December, and not being accompanied with

any draft, was supposed intended to be applied towards the advance of the $4,000; it was soon sold and credited on general account.

The plaintiff afterwards demanded the flour which was refused as it had been sold. He also made demand of the net proceeds of the sales which was refused, the defendants claiming a right to apply them to their own account against Williams & Hitchcock.

The judge directed a verdict for the plaintiff for $2,070. 82, value of flour agreed on, with interest, subject to the opinion of the court.

*By the Court,* NELSON, Ch. J. I am of opinion the plaintiff is entitled to the judgment.

The defendants had no lien upon the flour beyond the advances for freight and charges. The acceptances for the $4,000 were given upon the personal credit of Williams & Hitchcock; as there is nothing in the case providing for any specific security upon consignments thereafter to be made. The most that appears, is that payment was to be made by shipments of flour, in the course of the season.

The agreements between Williams & Hitchcock, and the plaintiff, in October, consummated by giving the draft and annexing thereto the bill of lading of the shipment in question, operated to pass the title to the latter; and as the defendants have failed to establish their lien, or any other paramount title to, or interest in the property, they must account to the owner for the net proceeds, or at least, to the amount of the draft, and interest, for the payment of which the flour was assigned as collateral security.

Judgment for the plaintiff.